UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

Civil Action No. 03-09-CV-484

---

U.S. COMMODITY FUTURES TRADING
COMMISSION,

        Plaintiff,

v.

DAVID A. OWEN, an individual,

        Defendant.

---

## CONSENT ORDER OF PERMANENT INJUNCTION AND OTHER STATUTORY AND EQUITABLE RELIEF AGAINST DEFENDANT DAVID A. OWEN

On October 30, 2009, the U.S. Commodity Futures Trading Commission ("Commission") filed a complaint seeking injunctive and other equitable relief, restitution and civil monetary penalties, among other things, against defendant David A. Owen ("Owen" or "Defendant") for violations of the Commodity Exchange Act ("Act"), as amended, 7 U.S.C. §§ 1 *et seq.*, and the Commission's Regulations ("Regulations") ("Complaint").

Contemporaneous with the filing of the Complaint, the Commission filed a consent Statutory Restraining Order ("SRO") and Order of Preliminary Injunction ("PI"). On November 9, 2009, the Court entered the SRO and PI.

I.

### CONSENTS AND AGREEMENTS

To effect settlement of the matters alleged in the Complaint without a trial on the merits or any further judicial proceedings, Owen

1. Consents to the entry of this *Consent Order of Permanent Injunction and Other Statutory and Equitable Relief Against Defendant David A. Owen* ("Order").

2. Affirms that he has agreed to this Order voluntarily, and that no promise or threat has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Order, other than as set forth specifically herein.

3. Acknowledges service of the Summons and Complaint.

4. Admits that this Court has jurisdiction over him and the subject matter of this case, and that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006).

5. Waives: (a) any and all claims that he may possess under the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and/or Part 148 of the Regulations, 17 C.F.R. §§ 148.1 *et seq.* (2009), relating to, or arising from, this action; (b) any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to or arising from this action; (c) any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and (d) all rights of appeal from this Order.

6. Neither admits nor denies any of the findings and/or conclusions made in this Order or the allegations contained in the Complaint, except as to jurisdiction and venue, which he admits. However, Owen agrees that the allegations of the Complaint and all of the findings and conclusions made by this Court and contained in Part II of the Order shall be taken as true and correct and be given preclusive effect, without further proof, for the purpose of: any

bankruptcy proceeding filed by, on behalf of, or against Owen, whether inside or outside of the United States; a Commission registration proceeding relating to him; and/or any proceeding to enforce the terms of this Order.

7.  Shall provide immediate notice to the Commission of any bankruptcy filed by, on behalf of, or against him in the manner required by Part V, paragraph 4 of this Order.

8.  Agrees that neither he nor any of his agents or employees under his authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or findings or conclusions in this Order, or creating, or tending to create, the impression that the Complaint or this Order is without a factual basis; provided, however, that nothing in this provision shall affect Owen's (a) testimonial obligations; or (b) right to take legal positions in other proceedings to which the Commission is not a party. Owen shall take all necessary steps to ensure that all of his agents and employees understand and comply with this agreement.

9.  Acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based upon the entry of the injunction in this action, Owen understands that he shall not be permitted to contest either the factual allegations of the Complaint or the findings of fact and conclusions of law in this Order.

10. Consents to the continued jurisdiction of this Court for the purpose of: determining the amounts of restitution and civil monetary penalty; enforcing the terms and conditions of this Order; and for any other purpose relevant to this action, even if any of the Defendant now or in the future resides outside the jurisdiction.

## II.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Order and that there is no just reason for delay. The Court therefore directs the entry of findings of fact, conclusions of law and a permanent injunction and ancillary equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), as set forth herein.

### FINDINGS OF FACT

1. Commencing in October 2006, Owen initially solicited, through casual conversations, prospective participants who were his clients for whom he prepared tax returns and/or gave financial or legal advice. Specifically, Owen told certain clients that he watched the futures markets in his spare time, and that he had developed an expertise in determining market movements and trading commodity futures.

2. Eventually, Owen increased the pressure of his solicitations of prospective participants while suggesting that his knowledge of the markets, coupled with the impending economic crisis, necessitated that they invest with him in earnest. According to Owen, the need to invest immediately was to avoid missing potentially profitable movements in the commodity futures markets.

3. The prospective pool participants were generally unknowledgeable about the

commodity futures markets.

4. In his solicitations, Owen told prospective participants of significant profits earned by current participants. Owen sometimes caused existing participants to share with prospective participants their email updates from Owen showing the profits. For example, one prospective pool participant received an email update showing that an initial pool participant's investment of $100,000.00 "posted" a return of approximately $41,000.00 during a nine month span. In addition, Owen told at least one prospective participant that he was 70% profitable in one year of trading commodity futures.

5. Owen also reassured prospective participants about the risks associated with trading commodity futures by claiming that he employed a "$500 stop – loss" on all his trading. Owen explained that such a "stop – loss" meant that pool participants would lose no more than $500 on any given trade.

6. Owen never disclosed to prospective or actual participants that he had prior criminal convictions for fraud, among other things.

7. Prospective participants relied on Owen's misrepresentations and omissions in deciding whether to participate in a pool.

8. Once the prospective participants were induced to participate in a pool, Owen had them each sign an "Oasis Futures Partnership Agreement." The partnership agreement detailed, among other things, the following information: the participants – usually limited to Owen as the managing partner and one to three additional investors; their percentage interest in the pool/partnership – based upon the amount invested; Owen's compensation – 20% of the net trading profit plus $1000/mo expenses; the account number and location of the trading account; and the purpose of the partnership which was to trade futures contracts on the Chicago Board of

5

Trade, the Chicago Mercantile Exchange, and the New York Mercantile Exchange, among other places.

9. The partnership agreement required that pool participants receive a monthly report of the partnership's trading activity.

10. Pool participants wired funds or sent checks to a personal bank account held in Owen's name in order to participate in a pool. Most of the pool participants invested with Owen throughout 2008.

11. Owen did not provide Disclosure Documents to prospective or actual participants.

12. Owen provided pool participants with periodic statements through electronic mail consistently showing profitable monthly results purportedly from Owen's trading on behalf of the pool. Some participants received the statements on a monthly basis and others received them more frequently.

13. For some participants, in his periodic statements, Owen provided market forecasts, as well as explanations for his movements in the markets. Owen also provided complex trading charts and graphs to "explain" his market moves. He routinely touted his avoidance of risks and preservation of capital as important goals.

14. Owen's periodic statements to pool participants, as well as his claims of being a successful commodity futures trader were false. Owen was not successfully trading on behalf of the pool, pool participants or himself.

15. Before and after soliciting pool participants, Owen maintained personal commodity futures trading accounts held in his name at a futures commission merchant registered with the Commission.

16. In his personal trading accounts during the relevant period, Owen lost

approximately $1.71 million trading commodity futures and was sustaining net losses on a monthly basis.

17. In January 2009, Owen notified pool participants that their funds were gone. He admitted that the account statements he provided to them were false, and that he lost a substantial portion of their money in the market. Owen then offered to, and did execute promissory notes to several pool participants for their lost capital. In some cases, Owen used pool participant funds to pay other participants requesting funds.

18. Pool participants have demanded full return of their funds. However, Owen has made only partial refunds.

**CONCLUSIONS OF LAW**

1. By the conduct identified above, Owen knowingly, willfully or recklessly made false, deceptive, or misleading representations and omissions of material facts in the solicitations of prospective and existing pool participants, in violation of Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii) (2006), with respect to acts occurring before June 18, 2008, and in violation of Sections 4b(a)(1)(A) and (C) of the Act as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (subtitled "CFTC Reauthorization Act of 2008" ("CRA")), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), to be codified at 7 U.S.C. §§ 6b(a)(1)(A) and (C), with respect to acts occurring on or after June 18, 2008.

2. By using funds solicited to trade commodity futures for pool participants for purposes other than trading, as set forth above, Owen knowingly misappropriated funds in violation of Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii) (2006), with respect to acts occurring before June 18, 2008, and in violation of Sections 4b(a)(1)(A) and (C)

of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A) and (C), with respect to acts occurring on or after June 18, 2008.

3. Furthermore, as set forth above, Defendant has willfully made or caused to be made to other persons false reports and statements concealing commodity futures trading losses, in violation of Section 4b(a)(2)(ii) of the Act, 7 U.S.C. § 6b(a)(2)(ii) (2006), with respect to acts occurring before June 18, 2008, and in violation of Section 4b(a)(1)(B) of the Act as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(B), with respect to acts occurring on or after June 18, 2008.

4. Owen, while acting as a commodity pool operator ("CPO"), violated Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2006), in that he directly or indirectly employed a device, scheme, or artifice to defraud participants or prospective pool participants, or has engaged in transactions, practices or a course of business that operated or operates as a fraud or deceit upon participants or prospective pool participants by using the mails or other means or instrumentalities of interstate commerce. Owen's fraudulent acts consisted of, among other things, solicitation fraud, misappropriation and issuance of false statements as alleged above.

5. Owen used the mails or instrumentalities of interstate commerce in or in connection with his business as a CPO while failing to register with the Commission as a CPO, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2006).

6. By depositing participant funds into accounts not held in the name of the pool, Defendant failed to operate the pools as legal entities separate from himself as the pool operator and failed to accept funds in the name of the pools, in violation of Regulations 4.20(a)(1) and (b), 17 C.F.R. §§ 4.20(a)(1) and(b) (2009).

7. Owen failed to furnish prospective pool participants with a written Disclosure

8

Document and failed to receive signed and dated acknowledgments from the prospective pool participants stating that they received the Disclosure Document, in violation of Regulations 4.21(a)(1) and (b), 17 C.F.R. §§ 4.21(a)(1) and (b) (2009).

## III.

### ORDER FOR PERMANENT INJUNCTION

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.  The defendant Owen shall be permanently restrained, enjoined and prohibited from directly or indirectly engaging, directly or indirectly in:

    a. in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or other agreement, contract or transaction subject to paragraph (1) and (2) of Section 5a(g) of the Act, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market –

    1. cheating or defrauding or attempting to cheat or defraud other persons;

    2. willfully deceiving or attempting to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person; and/or

    3. willfully making or causing to be made to other persons false reports or statement, or willfully entering or causing to be entered for the other person any false record;

    in violation of section 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(2)(A)-(C);

    b. using the mails or instrumentalities of interstate commerce in or in connection with his business as a CPO while failing to register with the Commission as a CPO, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2006);

    c. while acting as a CPO, employing a device, scheme or artifice to defraud pool participants, clients and prospective pool participants or clients or engaging in a transaction, practice or course of business which operates as a fraud or deceit upon pool participants, clients and prospective pool participants or clients, in violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2006);

9

d. while acting as a CPO, (1) receiving funds, securities or other property from an existing or prospective pool participant other than in the name of the pool; and/or (2) failing to operate the pool as a legal entity separate from the pool operator; in violation of Regulations 4.20(a)(1) and (b), 17 C.F.R. §§ 4.20(a)(1) and (b);

e. while acting as a CPO, (1) failing to furnish to a prospective participant in the pool a Disclosure Document for the pool prepared in accordance with Regulations 4.24 and 4.25 by no later than the time the pool operator delivers to the prospective participant a subscription agreement for the pool; and/or (2) accepting or receiving funds, securities or other property from a prospective participant without first receiving from the prospective participant an acknowledgement signed and dated by the prospective participant stating that the prospective participant received a Disclosure Document for the pool; in violation of Regulations 4.21(a)(1) and (b), 17 C.F.R. §§ 4.21(a)(1) and (b) (2009);

f. trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006);

g. entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2009)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act as amended by the CRA) ("forex contracts") for his own personal account, and for any account in which he has a direct or indirect interest;

h. having any commodity futures, options of commodity futures, commodity options, and/or forex contracts traded on his behalf;

i. controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

j. soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options of commodity futures, commodity options, and/or forex contracts;

k. applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14 (a)(9), 17 C.F.R. § 4.14(a)(9) (2009); and/or

10

1. acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2009)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14 (a)(9), 17 C.F.R. § 4.14(a)(9) (2009).

2. The injunctive provisions of this Order shall be binding upon Owen, upon any person who acts in the capacity of officer, agent, employee, attorney, successor and/or assign of Owen and upon any person who receives actual notice of this Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with Owen.

### IV.

### RESTITUTION, CIVIL MONETARY PENALTY, AND ANCILLARY RELIEF

**IT IS FURTHER ORDERED THAT:**

Owen shall comply fully with the following terms, conditions and obligations relating to the payment of restitution, the payment of a civil monetary penalty, and other ancillary equitable relief.

#### A. RESTITUTION

Owens' violations of the Act and Regulations merit the award of significant restitution. However, the Court recognizes that Owens is already subject to a $1,721,728.11 criminal judgment restitution obligation entered in United States v. David A. Owen, No. 3:09CR104-001LAC for the misconduct at issue in this civil action. Because the criminal court imposed restitution to Owens' defrauded customers, the Court is not ordering additional restitution in this Order..

#### B. CIVIL MONETARY PENALTY

1. Owen shall pay to the Commission a civil monetary penalty in the amount of

11

$1,400,000, plus post-judgment interest, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1. The civil monetary penalty shall be paid within ten days of date of entry of this Order. Post-judgment interest shall accrue beginning on the eleventh (11) day after the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

2. Owen shall pay this civil monetary penalty by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> Attn: Marie Bateman – AMZ-300
> DOT/FAA/MMAC
> 6500 S. MacArthur Blvd.
> Oklahoma City, Oklahoma 73169
> Telephone: 405-954-6569

If payment is to be made by electronic funds transfer, Owen shall contact Marie Bateman or her successor at the above address to receive payment instructions and shall fully comply with those instructions. Owen shall accompany payment of the penalty with a cover letter that identifies Owen and the name and docket number of the proceedings. Owen shall simultaneously transmit copies of the cover letter and the form of payment to the: Director, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581; and Chief, Office of Cooperative Enforcement, Division of Enforcement, at the same address.

3. Any acceptance by the Commission of partial payment of Owen's civil monetary

penalty shall not be deemed a waiver of Owen's requirement to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

### C.     EQUITABLE RELIEF PROVISIONS

The equitable relief provisions of this Order shall be binding upon Owen and any person who is acting in the capacity of officer, agent, employee, servant or attorney of Owen, and any person acting in active concert or participation with Owen who receive actual notice of this Order by personal service or otherwise.

### V.

### MISCELLANEOUS PROVISIONS

1.     Owen shall cooperate fully and expeditiously with the Commission, including the Commission's Division of Enforcement, in any current or future investigation, civil litigation or administrative matter related to the subject matter of this action. Including cooperating fully with the Plaintiff in its investigation of: a) the amount of funds and proceeds received by Defendant, and losses to Defendant's clients; and b) the identification of Defendant's assets. Owen shall comply fully, promptly, and truthfully with any inquires or requests for information from the Commission, including but not limited to, requests for production and authentication of documents and shall provide assistance at any trial, proceeding, or Commission hearing, including but not limited to, requests for testimony, depositions, and/or interviews, and shall testify completely and truthfully in any such proceeding, trial, or investigation and consistent with the statements and information he provided the Commission.

2.      If any provision of this Order or the application of any provision or circumstance is held invalid, the remainder of this Order, and the application of the provision to any other person or circumstance, shall not be affected by the holding.

3.      Upon being served with copies of this Order after entry by the Court, Owen shall sign an acknowledgment of such service and serve such acknowledgment on the Commission within seven (7) calendar days.

4.      This Court shall retain jurisdiction of this action in order to implement and carry out the terms of all orders and decrees, including orders setting the appropriate amounts of restitution and civil monetary penalty, that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of this Court, and to assure compliance with the Order.

5.      All notice required to be given by any provision in the Order shall be sent by certified mail, return receipt requested, as follows:

    Notice to the Commission:   James H. Holl, III, Esq.
                                            Chief Trial Attorney
                                            Commodity Futures Trading Commission
                                            1155 21st Street, NW
                                            Washington, D.C. 20581

6.      In the event that Owen changes his residential or business telephone number(s) and/or address(es) at any time, he shall provide written notice of the new number(s) and/or address(es) to the Commission within ten calendar days thereof.

SO ORDERED, this 20th day of May 2010.

                                                        *M. Casey Rodgers*
                                                UNITED STATES DISTRICT JUDGE

Case 3:09-cv-00484-MCR-EMT   Document 20-1   Filed 05/18/10   Page 15 of 15

Consented to and approved for entry by:

Defendant:

_____  Date: May 11, 2010
David A. Owen

Attorneys for Plaintiff U.S. Commodity Futures Trading Commission:

_____
James H. Holl, III
Chief Trial Attorney
Gretchen L. Lowe
Associate Director
1155 21st Street NW
Washington, DC 20581
Telephone: (202) 418-5000
Facsimile: (202) 418-5538

15